UPON A REHEARING EN BANC
McCLANAHAN, Judge.
The trial court found Malachi Antonio Byrd guilty of possession of cocaine and possession of a firearm by a convicted felon. On appeal, Byrd argues the trial court erred in denying his motion to suppress evidence of these crimes because the police, acting on information from a confidential informant, lacked probable cause to stop and search his vehicle, in violation of his Fourth Amendment rights. A panel majority of this Court agreed with Byrd and reversed the decision of the trial court. Byrd v. Commonwealth, 55 Va.App. 742, 759, 689 S.E.2d 769, 777 (2010). We granted the Commonwealth’s petition for rehearing en banc and stayed the mandate of the panel decision.[1] Upon rehearing en banc, we affirm the trial court.
I.
“ ‘In reviewing the denial of a motion to suppress based on the alleged violation of an individual’s Fourth Amendment rights, we consider the facts in the light most favorable to the Commonwealth.’ ” Lawson v. Commonwealth, 55 Va.App. 549, 552, 687 S.E.2d 94, 95 (2010) (quoting Ward v. Commonwealth, 273 Va. 211, 218, 639 S.E.2d 269, 271 (2007)). That includes evidence from both the suppression hearing and the trial. Emerson v. Commonwealth, 43 Va.App. 263, 272, 597 S.E.2d 242, 247 (2004).
*593 Virginia Beach Police Officer William Canada testified that at approximately 1:00 a.m., he received a tip from a known rehable informant that a drug transaction involving crack cocaine was going to take place within the next thirty minutes in the parking lot of the Harris Teeter grocery store located at 29th and Arctic Boulevard in Virginia Beach. Identifying two of the subjects, the informant told Canada that a black male and a black female would be pulling into the parking lot in a green four-door vehicle. The informant also told Canada that the female would be driving the vehicle and that the male passenger would be armed with a firearm. The grocery store, according to Canada, was located in what was known to be a high drug crime area where numerous narcotics arrests had been made.
Canada testified that he had worked with the informant for approximately eighteen months. The informant had been a “confidential informant” for six months prior to the incident at issue; but he had also been “a source of information” for a year prior to completing the process of becoming a confidential informant. Canada stated that during that time the informant had “provided very reliable information,” which generally involved narcotics-related criminal activity. This information “result[ed] in over twelve search warrants, seizures of large quantities of money, drugs [and] firearms,” along with a number of arrests. Furthermore, Canada indicated that all of the information he had received from the informant over the eighteen-month period had proven to be true.
Accordingly, Canada explained, based on the informant’s latest tip, he and two other police officers proceeded immediately to conduct surveillance on the Harris Teeter parking lot. Consistent with the tip, the officers observed a green four-door vehicle pull into the Harris Teeter parking lot at 1:35 a.m. A black female was driving the vehicle, and a black male, later identified as Byrd, was in the passenger seat. The driver parked the car and, approximately a minute later, the officers saw Byrd exit the vehicle and enter the grocery store — in variance with what the informant had expected, *594 having indicated that a drug transaction would take place in the parking lot. Less than two minutes later, however, Byrd exited the store empty-handed. He then returned to the waiting vehicle, and the two suspects drove out of the parking lot.
Shortly thereafter, the officers stopped and searched the vehicle in which Byrd was a passenger and recovered a loaded nine-millimeter handgun from the glove compartment, leading to Byrd’s arrest for possession of a firearm as a convicted felon. Then at the police station, one of the officers discovered that Byrd was carrying a bag of cocaine on his person, resulting in his drug charge.
In a pretrial motion, Byrd moved to suppress evidence of the firearm and the cocaine. Byrd argued the police did not have probable cause to stop and search his vehicle because the confidential informant’s tip was not reliable. After hearing the testimony of Officer Canada, and the corroborating testimony of Officer Jason Gregory, one of the other officers at the scene, the trial court denied Byrd’s motion. The court concluded that the police had probable cause to stop and search Byrd’s vehicle in light of the “totality of the circumstances.” The court specifically pointed to both the informant’s history of providing reliable information to the police and the details of the informant’s accurate predictions of Byrd’s future conduct on the night in question.
II.
When this Court reviews a trial court’s denial of a motion to suppress, the burden is upon the defendant to show that the ruling constituted reversible error. Jones v. Commonwealth, 277 Va. 171, 177-78, 670 S.E.2d 727, 731 (2009); McGee v. Commonwealth, 25 Va.App. 193,197, 487 S.E.2d 259, 261 (1997) (en banc). The ultimate question of probable cause in a Fourth Amendment challenge, as here presented, involves issues of both law and fact. Id. at 197-98, 487 S.E.2d at 261 (citing Ornelas v. United States, 517 U.S. 690, 691, 116 S.Ct. 1657, 1659, 134 L.Ed.2d 911 (1996)). Thus, “we give deference *595 to the factual findings of the trial court but independently decide whether, under the applicable law, the manner in which the challenged evidence was obtained satisfies constitutional requirements.” Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004) (citation omitted).
Probable cause, as the term implies, “ ‘exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place,’ ” Jones, 277 Va. at 178, 670 S.E.2d at 731 (quoting United States v. Grubbs, 547 U.S. 90, 95, 126 S.Ct. 1494, 1499, 164 L.Ed.2d 195 (2006)) (internal quotation marks omitted), as determined from the totality of the circumstances, Barnes v. Commonwealth, 279 Va. 22, 34, 688 S.E.2d 210, 217 (2010) (citations and internal quotation marks omitted). This means the probable cause standard “does not ‘demand any showing’” that a police officer’s belief regarding criminal activity be “ ‘correct or more likely true than false.’ ” Slayton v. Commonwealth, 41 Va.App. 101, 106, 582 S.E.2d 448, 450 (2003) (quoting Texas v. Brown, 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983)). An informant’s information thus may provide probable cause for an arrest or a search “ ‘so long as the officer has reasonable grounds to believe the [information] is true.’ ” McGuire v. Commonwealth, 31 Va.App. 584, 594-95, 525 S.E.2d 43, 48 (2000) (quoting Illinois v. Gates, 462 U.S. 213, 242, 103 S.Ct. 2317, 2334, 76 L.Ed.2d 527 (1983)). See United States v. Humphries, 372 F.3d 653, 659 (4th Cir.2004) (“quantum of facts required” for establishing probable cause is same for arrest or search (citing 2 Wayne R. LaFave, Search & Seizure § 3.1(b) (3d ed.1996))).
In Gates, the United States Supreme Court adopted a totality-of-the-circumstances analysis for assessing an informant’s information, consistent with the analysis that “traditionally has guided probable-cause determinations.” Gates, 462 U.S. at 233, 103 S.Ct. at 2329. Gates directs courts to assess whether officers acting on an informant’s tip had probable cause “by examining all of the facts known to officers leading up to the arrest [or search], and then asking “whether *596 these historical facts, viewed from the standpoint of an objectively reasonable police officer,’ amount to probable cause.” United States v. White, 549 F.3d 946, 950 (4th Cir.2008) (quoting Ornelas, 517 U.S. at 696, 116 S.Ct. at 1661-62). In other words, the facts “must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.” Gates, 462 U.S. at 232, 103 S.Ct. at 2329. Under this standard, courts recognize that “a police officer may draw inferences based on his own experience in deciding whether probable cause exists,” Ornelas, 517 U.S. at 700, 116 S.Ct. at 1663, including inferences “that might well elude an untrained person,” United States v. Cortez, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981).
The Gates Court adopted this totality-of-the-circumstances approach to analyzing an informant’s tip as it abandoned the “ ‘two-pronged test’ ” derived from its decisions in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), which “directed] analysis into two largely independent channels — the informant’s ‘veracity’ or ‘reliability’ and his ‘basis of knowledge.’ ” Gates, 462 U.S. at 228-34, 103 S.Ct. at 2326-30. As the Gates Court explained, a totality-of-the-circumstances analysis “permits a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant’s tip,” whereas the “ ‘two-pronged test’ [had] encouraged an excessively technical dissection of informants’ tips.” Id. at 234, 103 S.Ct. at 2330.
From a practical standpoint, the Court reasoned:
[P]robable cause is a fluid concept — turning on the assessment of probabilities in particular factual contexts — not readily, or even usefully, reduced to a neat set of legal rules. Informants’ tips doubtless come in many shapes and sizes from many different types of persons. As we said in Adams v. Williams, 407 U.S. 143, 147 [92 S.Ct. 1921, 1923, 32 L.Ed.2d 612] (1972): “Informants’ tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability.” Rigid legal rules are ill-suited to an area of such diversity.
*597 Id. at 232, 103 S.Ct. at 2329. The Court went on to characterize its totality-of-the-circumstances approach to assessing an informant’s tip as a “flexible, common-sense standard ... [that] serves the purpose of the Fourth Amendment’s probable-cause requirement.” Id. at 239, 103 S.Ct. at 2333. See Derr v. Commonwealth, 242 Va. 413, 421, 410 S.E.2d 662, 666 (1991) (stating that Gates “rejected] a hypertechnical, rigid, and legalistic analysis of probable cause determinations”); Robinson v. Commonwealth, 53 Va.App. 732, 738, 675 S.E.2d 206, 210 (2009) (explaining that, under Gates, we are not bound by any “technical standard concerning informant reliability”); McGuire, 31 Va.App. at 595, 525 S.E.2d at 48-49 (“Gates opened the door for police officers to establish the credibility of an informer in a variety of ways .... ” (citation and internal quotation marks omitted)).
Under Gates, the informant’s “‘reliability and basis of knowledge’ ” are still “ ‘highly relevant’ factors in the overall totality of the circumstances analysis.” Jones, 277 Va. at 179, 670 S.E.2d at 732 (quoting Gates, 462 U.S. at 230, 103 S.Ct. at 2328). Gates makes clear, however, that these two factors are not “separate and independent requirements to be rigidly exacted in every case.” Gates, 462 U.S. at 230, 103 S.Ct. at 2328. “Instead, they are better understood as relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable-cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.” Id. at 233, 103 S.Ct. at 2329.
Police corroboration of an informant’s tip has been “consistently recognized” as a form of such additional or alternative indicia of informant reliability. Id. at 241, 103 S.Ct. at 2334. In Gates, the Court held that independent police work corroborating certain details of the informant’s tip — indeed a tip from an anonymous informant — established probable cause to search the Gateses’ automobile and home for illegal narcotics. Id. at 244, 103 S.Ct. at 2335. The Court reached that conclusion even though the portions of the tip that the police were *598 able to corroborate through their own observations were of “entirely innocent behavior” involving the Gateses’ travel plans. Id. at 245 n. 13, 103 S.Ct. at 2335 n. 13. The Court explained that the tip “relat[ed] not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted.” Id. at 245, 103 S.Ct. at 2335. If the informant had access to that type of information “likely obtained from the Gateses themselves, or from someone familiar with their not entirely ordinary travel plans,” the Court reasoned, “it was not unlikely that [the informant] also had access to reliable information of the Gateses’ alleged illegal activates.” Id. While the informant could have learned of the Gateses’ travel plans through a “talkative neighbor or a travel agent,” the Court acknowledged, it determined that the verified information was enough to establish “a fair probability that the [informant] had obtained his entire story either from the Gateses or someone they trusted. And corroboration of major portions of the [informant’s] predictions provide[d] just [that] probability.” Id. at 246, 103 S.Ct. at 2336. See id. at 242-43, 103 S.Ct. at 2334 (describing Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), as “classic case” of value of police corroboration of informant’s tip where no basis of knowledge for tip was given) (Draper discussed at length in section III.D., infra).
III.
Byrd argues the police lacked probable cause to stop and search his vehicle because the informant, while reliable, was not “unusual[ly]” or “extraordinarily” reliable, the informant’s tip to the police regarding Byrd’s criminal activity lacked sufficient detail and was inaccurate, and the informant did not provide the police with any “basis of knowledge” for the tip. Thus, Byrd concludes, the trial court erred in denying his motion to suppress the evidence supporting his drug and firearm-related convictions. We do not agree. Viewing the totality of the circumstances presented to the police officers at the time they stopped and searched Byrd’s vehicle, *599 we conclude the police had probable cause to believe Byrd was engaged in criminal activity and contraband would be discovered in his vehicle. The trial court, therefore, did not err in denying Byrd’s suppression motion.
A.
First, based on the informant’s past performance, there was a “strong showing” of the informant’s reliability. Gates, 462 U.S. at 233, 103 S.Ct. at 2329. The informant provided tips to the police over a period of approximately eighteen months that resulted in the execution of twelve search warrants, seizures of large quantities of money, drugs, and firearms, and a number of arrests. And all of the information that the informant provided to the police during that period proved to be true. Based on this history, Officer Canada described the informant as “very” reliable.
We reject Byrd’s argument that we should nevertheless discount the degree of the informant’s reliability because there is no evidence the tips led to convictions. As stated in United States v. Johnson, 351 F.3d 254, 259 (6th Cir.2003), even if “previous successful searches based on [the informant’s] statements had not led to successful prosecutions, this would by itself not have thrown any doubt on the reliability or truthfulness of the informant,” as the “mere fact that contraband was discovered where he claimed it was going to be discovered is sufficient indicia of his reliability.” See United States v. Angulo-Lopez, 791 F.2d 1394, 1397 (9th Cir.1986) (“If the informant has provided accurate information on past occasions, he may be presumed trustworthy on subsequent occasions” (citation omitted)); Sexton v. State, 397 A.2d 540, 546 (1979) (“The test for determining the reliability of an undisclosed informant is not his record in aiding arrests or convictions, but whether his information has ever been verified in the past.”); People v. Arnold, 186 Colo. 372, 527 P.2d 806, 809 (1974) (explaining it would be “an undue restriction” on the police to require that the informant’s information led to convictions because “[t]he information previously furnished may be in connection with cases not yet tried or may relate to *600 prosecutions dismissed for reasons unrelated to the reliability of the informant’s information”).
As Professor LaFave explains:
Courts have consistently held that an informant’s track record is sufficiently established by a showing (i) that on one or more prior occasions the informant indicated that a certain object, usually narcotics, but sometimes such other items as stolen property, counterfeit money, or even the body of a homicide victim are concealed at a certain place, and (ii) the information was verified as true by a search which uncovered the specified items at the place indicated. This is a sound result, for the fact that evidence was turned up which the informant indicated would be turned up bears very directly upon the informant’s credibility.... [A]s a general proposition such a showing may be more convincing than an assertion that the informer’s prior information led to convictions, for — except in those cases where conviction follows from the single fact of a defendant’s possession of a certain object, which the informant may have previously asserted as a fact — a conviction is likely to follow from an accumulation of several facts above and beyond those communicated by the informant.
2 Wayne R. LaFave, Search and Seizure § 3.8(b), at 116-17 (4th ed.2004) (footnotes and internal quotation marks omitted).
We also reject Byrd’s contention that we should view the informant on the lower end of some numerical — and necessarily arbitrary — credibility scale simply because, by comparison, the informant’s history of providing information to the police was of a shorter duration and involved far fewer tips than was the case with the informant in Askew v. Commonwealth, 38 Va.App. 718, 568 S.E.2d 403 (2002). There, the informant had provided tips to the police for three years, leading to over 200 arrests, and had never given unreliable information. Id. at 720, 568 S.E.2d at 404-05. Because the record in this case shows that the informant was, in fact, “very” reliable, our assessment of the informant’s reliability, in terms of past performance, need not go any further, as to this part of our *601 review of the “overall reliability” of the informant’s tip regarding Byrd. Gates, 462 U.S. at 233,103 S.Ct. at 2329.
B.
Second, the informant provided to the police significant details regarding Byrd’s predicted conduct on the night in question, nearly all of which were corroborated by the police, thereby bolstering the “ ‘inherent reliability of the informant’s information.’ ” Smith v. Commonwealth, 56 Va.App. 592, 601, 696 S.E.2d 211, 215 (2010) (quoting McGuire, 31 Va.App. at 595, 525 S.E.2d at 49). That is to say, as in Gates, the informant’s tip “relat[ed] not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted,” which were substantially verified by independent police work. Gates, 462 U.S. at 245, 103 S.Ct. at 2335.
Approximately thirty-five minutes before Byrd’s arrival at the Harris Teeter grocery store located at 29th and Arctic Boulevard in Virginia Beach, the informant predicted in his report to Canada that Byrd, identified as a black male, would be arriving at that location within thirty minutes, that he would be a passenger in a green four-door vehicle, that he would be accompanied by a black female, and that the female would be driving the vehicle. The informant also indicated the two subjects would be involved in a drug transaction taking place in the grocery store parking lot. Through their own investigation, Canada and two other officers then verified all but the last piece of information, as Byrd quickly entered and exited the grocery store, empty-handed, rather than engaging in a transaction in the grocery store parking lot.
Contrary to Byrd’s contention, the fact there was a discrepancy with this last piece of the informant’s predictive information does not mean that the police should have concluded the tip was unreliable. See United States v. Diallo, 29 F.3d 23, 26 (1st Cir.1994) (informant’s tip was not unreliable just because he had predicted there would be three men in a red Toyota who were going to engage in a drug transaction on a particu *602 lar night when in actuality there were four men in two cars); United States v. Morales, 923 F.2d 621, 625 (8th Cir.1991) (“While Morales was not wearing a black T-shirt at the time of arrest as the informant had predicted, he did arrive at the depot at the appointed time in a red pick-up with a white topper accompanied by a woman.”). Once again, we are to apply a totahty-of-the-circumstances analysis, viewed from the perspective of a reasonable police officer. The police could have reasonably surmised Byrd changed the location of the drug transaction to inside the grocery store subsequent to the time that the informant learned of Byrd’s plans and provided the tip to the police. As the First Circuit aptly stated in Diallo, “[a] tipster need not deliver an ironclad case to the authorities on the proverbial silver platter.” Diallo, 29 F.3d at 26 (citation and internal quotation marks omitted).
Furthermore, as Gates teaches, the fact that the portion of the informant’s predictive information that was corroborated by the police was of “entirely innocent activity” does not diminish its significance. Gates, 462 U.S. at 245 n. 13, 103 S.Ct. at 2335 n. 13. “In making a determination of probable cause the relevant inquiry is not whether particular conduct is ‘innocent’ or ‘guilty,’ but the degree of suspicion that attaches to particular types of noncriminal acts.” Id. “[T]he corroboration of minor, innocent details can suffice to establish probable cause.” Morales, 923 F.2d at 625 (citation and internal quotation marks omitted). Thus, when the officers evaluated the seemingly innocent details of the corroborating information in conjunction with the informant’s history for truthfulness and reliability,- they could have reasonably believed that the uncorroborated portion of the informant’s tip, i.e., Byrd’s predicted illegal activity, was also correct. When “an informant is right about some things, he is more probably right about other facts ... including the claim regarding [the suspect’s] illegal activity.” Gates, 462 U.S. at 244, 103 S.Ct. at 2335 (internal citation and quotation marks omitted). As we pointed out in Ramey v. Commonwealth, 35 Va.App. 624, 631, 547 S.E.2d 519, 523 (2001) (quoting Alabama v. White, 496 U.S. 325, 332, 110 S.Ct. 2412, 2417, 110 L.Ed.2d 301 (1990)), “ ‘[because only a small *603 number of people are generally privy to an individual’s itinerary, it is reasonable for police to believe that a person with access to such information is likely to have access to reliable information about that individual’s illegal activities.’ ”
C.
Finally, in addition to the fact that the informant was very reliable and that the informant provided to the police significant details of Byrd’s predicted future conduct, nearly all of which was corroborated by the police, the police knew that the location of the predicted drug transaction was a high drug crime area where numerous narcotics arrests had been made. Given the other facts known to the police, this last fact was also one that a reasonable police officer would have been entitled to consider in determining whether probable cause existed. See Ross v. Commonwealth, 35 Va.App. 103, 107, 542 S.E.2d 819, 821 (2001); see also United States v. Broadie, 452 F.3d 875, 883 (D.C.Cir.2006); United States v. Wadley, 59 F.3d 510, 512 (5th Cir.1995); United States v. Hughes, 898 F.2d 63, 64 (6th Cir.1990).
D.
The above-described circumstances supporting the police officers’ probable cause determination to stop and search Byrd’s vehicle are as compelling, if not more so, as those presented in Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), which the Gates Court described as the “classic case on the value of corroborative efforts” by the police when acting on an informant’s tip where, as here, the informant did not state the basis for his information. Gates, 462 U.S. at 242, 103 S.Ct. at 2334. In Draper, the informant had provided the police with information for about six months and had always been “ ‘accurate and reliable.’ ” Draper, 358 U.S. at 309, 79 S.Ct. at 331. The informant told the police that Draper would arrive by train at a particular location, on one of two days, possessing three ounces of heroin. The informant also gave a detailed description of Draper, consist *604 ing of his physical attributes, the clothing he would be wearing, the bag he would be carrying, and the fact that he “habitually ‘walked real fast.’ ” Id. After failing to observe anyone fitting Draper’s description at the train station on the first day, the police returned the second day and did observe an individual who fit the description in terms of physical appearance, attire, bag, and gait. Id. at 309-10, 79 S.Ct. at 331. Having verified this information, but without knowing “whether [Draper] had accomplished his mission and had the three ounces of heroin on his person or in his bag,” the police arrested Draper. Id. at 313, 79 S.Ct. at 333. The Supreme Court held that the police had probable cause to arrest Draper based on the verified portion of the informant’s information, reasoning that “surely” the police “had ‘reasonable grounds’ to believe that the remaining unverified bit of [the informant’s] information — that Draper would have the heroin with him— was likewise true.” Id.[2]
*605 Commenting further on Draper, the Supreme Court in Gates stated that it was “perfectly reasonable” that “all of the corroborating detail established in Draper was of entirely innocent activity.” Gates, 462 U.S. at 245 n. 13, 103 S.Ct. at 2335 n. 13. After reiterating that probable cause only requires “a probability or substantial chance of criminal activity,” the Court explained that “[b]y hypothesis, therefore, innocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to sub silentio impose a drastically more rigorous definition of probable cause than the security of our citizens’ demands.” Id.
IV.
For these reasons, we hold the police had probable cause to stop and search Byrd’s vehicle based on the totality of circumstances presented to the police at that time. To hold otherwise would require that we apply an overly rigorous and legalistic definition of probable cause, contrary to the teaching of Gates and its progeny. The trial court, therefore, did not err in denying Byrd’s suppression motion, and his convictions are thus affirmed.

Affirmed.

. While ruling in Byrd's favor on his challenge to the denial of the suppression motion, the majority panel ruled that his challenge to the trial court’s denial of his motion to strike the firearm charge was waived under Rule 5A:18; Byrd has abandoned that challenge in this rehearing en banc.

. See also United States v. Gagnon, 373 F.3d 230, 232-38 (2d Cir.2004) (informant reported that Gagnon would be arriving at a certain date, time, and location, driving a tractor trailer with the name "Lanfort” on the side of the trailer, for the purpose of receiving the shipment of marijuana located in the informant’s trailer); United States v. Marchena-Borjas, 209 F.3d 698, 699-700 (8th Cir.2000) (informant reported that a named Hispanic male was in possession of methamphetamine at a certain trailer park, and would be delivering it at a certain time to a certain location, driving a silver Oldsmobile mini-van with Nebraska license plates); United States v. Miller, 925 F.2d 695, 696-700 (4th Cir.1991) (informant reported that Miller would be arriving at the bus station on a certain day wearing blue jeans and a blouse, carrying a brown tote bag, and would be in possession of drugs); Williams v. Commonwealth, 147 S.W.3d 1, 6-8 (Ky.2004) (informant reported that a black male, who would be in possession of crack cocaine, would be driving a blue El Camino to a certain apartment complex and picking up another black male); State v. Abbott, 277 Kan. 161, 83 P.3d 794, 796-98 (2004) (informant reported that Abbott would be traveling in a two-tone van to a certain location, giving the date and time, to purchase methamphetamine); State v. Munson, 594 N.W.2d 128, 132-37 (Minn. 1999) (informant reported that "in 1 1/2 to 2 hours a rented, green 1996 'Bronco or Jeep type vehicle’ with Minnesota license plates” would arrive at a certain location occupied by three African-American males, and the vehicle would contain a large quantity of crack cocaine); Commonwealth v. Bakoian, 412 Mass. 295, 588 N.E.2d 667, 668-72 (1992) (informant reported that Bakoian and another named individual, traveling in a black Thunderbird with a beige roof bearing a Massachu *605 setts license plate, would "soon” arrive at a certain location with a shipment of heroin).