COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Judges Huff, Chafin and Decker
Argued by teleconference


COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
v.      Record No. 1274-14-3     JUDGE MARLA GRAFF DECKER
                                                        DECEMBER 16, 2014
JAMES GERARD PHILLIPS, JR.


FROM THE CIRCUIT COURT OF FRANKLIN COUNTY
William N. Alexander, II, Judge

Elizabeth C. Kiernan, Assistant Attorney General (Mark R. Herring,
Attorney General, on briefs), for appellant.

George P. Hunt, III (Davis, Davis, Davis, & Davis, on brief), for
appellee.


James Gerard Phillips, Jr. (the defendant), stands indicted for possession of

methamphetamine in violation of Code § 18.2-250.  Pursuant to Code §§ 19.2-398 and -400, the

Commonwealth appeals a pretrial ruling granting the defendant's motion to suppress evidence

recovered as a result of a search of a container seized from his automobile during a routine traffic

stop.  The Commonwealth contends that probable cause supported the search of the container and,

thus, that the trial court erred in suppressing the container's contents.  Because the facts found by

the trial court, viewed objectively, provided probable cause for the search, we reverse the order

suppressing the evidence and remand the case for further proceedings consistent with this opinion.[1]

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The Commonwealth argues in the alternative that if the officer lacked probable cause
for the search, his behavior was not sufficiently culpable to merit exclusion of the evidence.  We
do not consider this second assignment of error because it is moot in light of our holding that
probable cause supported the search.

## I. BACKGROUND[2]

Shortly after 10:00 p.m. on December 13, 2013, Sergeant K.B. Pruett of the Franklin County Sheriff's Office stopped a vehicle for failing to display a front license plate. The defendant was the vehicle's sole occupant. As Pruett spoke with the defendant, he noticed that the defendant was "very fidgety." Initially, the defendant was sitting upright and produced his driver's license at Pruett's request. However, when Pruett asked if "anything illegal" was in the vehicle, the defendant "started to be evasive," turning his back toward Pruett and placing his hands out of Pruett's view.

Investigator Nick Shockley responded as backup within five seconds of the stop. Shockley approached the vehicle on the passenger's side. He was traveling that night with Sergeant David Lyle, who was the Narcotics Supervisor for the Sheriff's Office. Prior to Shockley's participation in the traffic stop, Lyle told Shockley that he had received information that night about the defendant from an informant. Lyle also told Shockley that the informant had related that the defendant "was heading to a residence in Truvine to cook methamphetamine." Shockley had "been in [the defendant's] presence before."

While Shockley stood on the passenger's side of the vehicle and shone his flashlight through the window, he saw that the defendant had "his right hand closed and . . . stuffed . . . under his leg, . . . between his knee and his hip as though he was almost sitting on his hand." Shockley called Pruett's attention to the defendant's actions because he thought the defendant had something in his hand and "felt it was an officer safety issue." Pruett testified that the defendant's "disappearing"

---

[2] On review of a ruling on a motion to suppress, this Court is bound by the trial court's findings of fact unless "'plainly wrong' or without evidence to support them." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*). The trial court is not required to make explicit factual findings and, to the extent that it does not make such findings, this Court views the evidence in the light most favorable to the prevailing party, granting to the evidence all reasonable inferences fairly deducible therefrom. See Satchell v. Commonwealth, 20 Va. App. 641, 648, 460 S.E.2d 253, 256 (1995) (*en banc*); Commonwealth v. Ramey, 19 Va. App. 300, 301, 450 S.E.2d 775, 776 (1994).

hands also made him "uncomfortable" and "concerned" for his safety. In response, Pruett opened the vehicle door and tried to grab the defendant's hands "[s]o he couldn't reach back," but Pruett succeeded in "get[ting] . . . [only] his left hand." Pruett then asked the defendant to step out of the vehicle.

As the defendant got out, Shockley saw him throw an object onto the seat. At Shockley's request, Pruett retrieved the object and gave it to him. Shockley described the object as an opaque white plastic container with a lid. The court examined the item and found that it was one-and-one-half to two inches in diameter and about one inch deep.

Shockley testified that he had training and experience concerning the detection and storage of methamphetamine, cocaine, and other controlled substances. He said that he had not seen a container of that particular type before but that it was "not uncommon to have containers like this that are used to carry [drugs]." He added that in "a lot of cases" he had found drugs "in containers very similar to [the one seized]." Shockley acknowledged that such a container could also hold entirely "innocent things," but he explained that he "had really strong information" indicating that the container at issue held drugs. Shockley noted the defendant's "obvious effort to hide [the container] from Sergeant Pruett's view," which involved "stuffing it under his leg . . . [with] a closed fist." He further pointed to the fact that when the defendant got out of the vehicle, "he threw [the container] in the seat." Shockley considered these facts in combination with "all the information that [the officers] received that night . . . about the defendant."

In ruling on the motion to suppress, the trial judge noted that Pruett and Shockley "really [did not] testify the same way," but he also observed that "there is nothing unusual about" the variance in the testimony. He concluded, "I don't think either one of them is lying."[3] The judge

_____

[3] The judge characterized the distinction as being Pruett's statement of a concern for weapons versus Shockley's belief that the defendant "had drugs in his hand."

ruled that the traffic stop was legal based on the absence of a front license plate on the defendant's vehicle. Additionally, he concluded that Sergeant Pruett was justified in removing the defendant from the vehicle for safety reasons based on furtive movements including the hiding of his hand. The judge also found that Investigator Shockley saw the defendant conceal something in his fist beneath his leg and that Shockley "did have information that . . . an informant had told [Sergeant] Lyle that the defendant may be headed to . . . a location where they were manufacturing methamphetamine." The judge further reasoned, however, that the container Shockley saw in the defendant's hand could have concealed something other than drugs. The court concluded that Shockley's action of opening the container was a search and that although he "probably [had] a reasonable suspicion based on what [Sergeant] Lyle said, . . . [t]here [was] no reason why . . . the officers couldn't have gotten a search warrant at that point if they thought there was enough evidence." The court ruled that the question "should have been presented to the magistrate and a search warrant obtained." On that basis, the court held that the search was illegal and granted the defendant's motion to suppress.

## II. ANALYSIS

On appeal of a ruling granting a defendant's motion to suppress, the Commonwealth has the burden to show that the trial court's ruling constituted reversible error. See Murphy v. Commonwealth, 264 Va. 568, 573, 570 S.E.2d 836, 838 (2002). "'Ultimate questions of reasonable suspicion and probable cause to make a warrantless search' involve questions of both law and fact and are reviewed *de novo* on appeal." McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (*en banc*) (quoting Ornelas v. United States, 517 U.S. 690, 691 (1996)). However, this Court is "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them[,] and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." Id. at 198, 487 S.E.2d at 261.

To the extent that the trial court does not make explicit findings of fact, we view the evidence and the inferences deducible from it in the light most favorable to the defendant, who prevailed below. See Satchell v. Commonwealth, 20 Va. App. 641, 648, 460 S.E.2d 253, 256 (1995) (*en banc*); Commonwealth v. Ramey, 19 Va. App. 300, 301, 450 S.E.2d 775, 776 (1994).

The trial court concluded, and the defendant concedes, that the stop of his vehicle and the accompanying brief detention were lawful because no front license plate was displayed. See, e.g., McCain v. Commonwealth, 275 Va. 546, 550, 553, 659 S.E.2d 512, 514, 516 (2008). It is also undisputed that an officer may lawfully require the driver and any passengers to exit the vehicle for the duration of the stop. See Commonwealth v. Smith, 281 Va. 582, 590, 709 S.E.2d 139, 142 (2011). The question before the Court in this appeal is whether the evidence supports the trial court's ruling that during the course of the lawful traffic stop, Investigator Shockley violated the defendant's Fourth Amendment rights by searching the container that he first secreted beneath his leg and then threw behind him onto his seat when asked to get out of the vehicle.

The Fourth Amendment prohibits *unreasonable* searches and seizures. Buhrman v. Commonwealth, 275 Va. 501, 505, 659 S.E.2d 325, 327 (2008). Whether the Fourth Amendment has been violated is a question to be determined from all the circumstances and is viewed under an *objective* rather than subjective standard. See Samson v. California, 547 U.S. 843, 848 (2006); Terry v. Ohio, 392 U.S. 1, 21-22 (1968); Thomas v. Commonwealth, 57 Va. App. 267, 273-74, 701 S.E.2d 87, 90-91 (2010). "A search is considered reasonable when it is either supported by a warrant, or when an exception to the warrant requirement has been met." Buhrman, 275 Va. at 505, 659 S.E.2d at 327.

A warrantless search is generally constitutional when supported by both probable cause and exigent circumstances. See, e.g., Royal v. Commonwealth, 37 Va. App. 360, 365, 558 S.E.2d 549, 551 (2002). The United States Supreme Court has made clear that exigent circumstances are

presumed when an operational automobile is involved.  Maryland v. Dyson, 527 U.S. 465, 466-67 (1999) (*per curiam*); Pennsylvania v. Labron, 518 U.S. 938, 940 (1996) (*per curiam*); see Duncan v. Commonwealth, 55 Va. App. 175, 179, 684 S.E.2d 838, 840 (2009).  As long as probable cause exists to search the automobile, no additional exigency need be proved.  Dyson, 527 U.S. at 466-67.  Therefore, "if an officer stops a vehicle and has probable cause to believe that the vehicle contains evidence of a crime, then a warrantless search of that vehicle is permissible under the automobile exception."  Duncan, 55 Va. App. at 179, 684 S.E.2d at 840.

This authority to search a vehicle upon a showing of probable cause, without a warrant or exigent circumstances, also applies to containers inside that vehicle.  Under the United States Supreme Court's decision in California v. Acevedo, 500 U.S. 565 (1991), "police may search an automobile and [any] containers [inside] it [in which] they have probable cause to believe contraband or evidence is contained."[4]  Id. at 580, quoted with approval in Alvarez v. Commonwealth, 24 Va. App. 768, 774-75, 485 S.E.2d 646, 649-50 (1997) (upholding the warrantless search of a box found in the cargo area of a bus after a narcotics dog alerted his handler to the box).

In determining whether an officer had probable cause, "courts should focus upon 'what the totality of the circumstances meant to police officers trained in analyzing the observed conduct for purposes of crime control.'"  Buhrman, 275 Va. at 505, 659 S.E.2d at 327 (quoting Hollis v. Commonwealth, 216 Va. 874, 877, 223 S.E.2d 887, 889 (1976)).  Probable cause, "'as the very name implies, deals with probabilities.'"  Derr v. Commonwealth, 242 Va. 413, 421, 410 S.E.2d

---

[4] The Court noted the "curious line" it had previously drawn "between the search of an automobile that coincidentally turns up a container and the search of a container that coincidentally turns up in an automobile."  Acevedo, 500 U.S. at 580.  In deciding Acevedo, the Court "provid[ed] one rule to govern all automobile searches" based on a showing only of probable cause, without requiring proof of exigent circumstances other than ready mobility based on the operability of the automobile.  Id.

662, 666 (1991) (quoting Saunders v. Commonwealth, 218 Va. 294, 300, 237 S.E.2d 150, 155 (1977)).  It exists "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found" in the place to be searched.  Ornelas, 517 U.S. at 696.  Although probable cause is a higher standard than reasonable suspicion, it "'requires only a probability or substantial chance of criminal activity, *not an actual showing of such activity*.'"  Joyce v. Commonwealth, 56 Va. App. 646, 659, 696 S.E.2d 237, 243 (2010) (quoting Illinois v. Gates, 462 U.S. 213, 243 n.13 (1983)).  It "does not 'demand any showing that such a belief be . . . more likely true than false.'"  Slayton v. Commonwealth, 41 Va. App. 101, 106, 582 S.E.2d 448, 450 (2003) (quoting Texas v. Brown, 460 U.S. 730, 742 (1983) (plurality opinion)).  "Not even a 'prima facie showing' of criminality is required" to establish probable cause.  Joyce, 56 Va. App. at 659, 696 S.E.2d at 243 (quoting Gates, 462 U.S. at 235).

Where the evidence establishing probable cause is based in part on information provided by an informant, the informant's "reliability and basis of knowledge" are relevant factors in the overall totality-of-the-circumstances analysis.  Jones v. Commonwealth, 277 Va. 171, 179, 670 S.E.2d 727, 732 (2009) (citing Gates, 462 U.S. at 230); see Byrd v. Commonwealth, 57 Va. App. 589, 597, 704 S.E.2d 597, 601 (2011) (*en banc*).  No controlling case law "sets a technical standard concerning informant reliability.  Rather, . . . appellate review of the totality of the circumstances 'permits a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending' the informant's tip" along with additional information that, taken as a whole, contributes to probable cause.  Robinson v. Commonwealth, 53 Va. App. 732, 738, 675 S.E.2d 206, 210 (2009) (quoting Gates, 462 U.S. at 234); see Gates, 462 U.S. at 227-33 (rejecting the notion lower courts had drawn from previous Supreme Court decisions that reliability and basis of knowledge "should be understood as entirely separate and independent requirements to be rigidly exacted in every case").  "[U]nder the 'totality-of-the-circumstances' approach [of] Gates, even an anonymous tip

can provide probable cause if other facts and circumstances sufficiently compensate for the lack of information about the informant himself." Smith, 56 Va. App. at 602, 696 S.E.2d at 215-16 (citation omitted). When an officer's independent "observations and other facts are highly suspicious and come very close to establishing probable cause" on their own, an informant's tip that is inadequate under both the reliability and basis of knowledge prongs of the totality-of-the-circumstances test nevertheless may "bridge the gap" to prove probable cause. 2 Wayne R. LaFave, Search and Seizure § 3.3(f), at 240 (5th ed. 2012); see Smith, 56 Va. App. at 605-06, 696 S.E.2d at 217-18.

The Supreme Court of Virginia "has consistently declined to find that probable cause can be established *solely* on the observation of material which can be used for legitimate purposes, even though the experience of an officer indicates that such material is often used for illegitimate purposes." Brown v. Commonwealth, 270 Va. 414, 420-21, 620 S.E.2d 760, 763 (2005) (emphasis added). In Harris v. Commonwealth, 241 Va. 146, 400 S.E.2d 191 (1991), for example, the Court held that where an officer frisked a vehicle passenger for weapons and found a film canister, the officer lacked probable cause to search the canister. Id. at 147-48, 151-52, 154 & n.2, 400 S.E.2d at 192, 194-95, 196 & n.2 (holding that the officer's hunch and information from an informant of unknown reliability, who reported merely that the driver's car would contain drugs, was insufficient to provide probable cause to search the film canister).

However, the Supreme Court has also recognized that such observations may combine with some other circumstance indicating criminal activity to support a finding of probable cause. Brown, 270 Va. at 421, 620 S.E.2d at 763. Furtive gestures or other types of evasive behavior may provide the necessary additional circumstances. See Hollis, 216 Va. at 875-77, 223 S.E.2d at 888-89. For example, in Brown, the Court held that the mere possession of a hand-rolled cigarette by a vehicle passenger, who was asleep, was insufficient to provide probable cause to believe the cigarette

contained marijuana rather than tobacco.  Brown, 270 Va. at 420-21, 620 S.E.2d at 763-64.  In

Hollis, by contrast, an automobile passenger not only possessed a hand-rolled cigarette but also

"furtively attempted to hide" the cigarette from the officer's view.  Hollis, 216 Va. at 875-77, 223

S.E.2d at 888-89.  In that case, the Supreme Court held that this information "*combined* to provide

the necessary probable cause to search the car without obtaining a warrant."  Id. at 877, 223 S.E.2d

at 889 (emphasis added) (not considering an anonymous informant's tip in the probable cause

analysis because a more stringent informant reliability test applied prior to the United States

Supreme Court's decision in Gates).

In the present case, the bulk of the information upon which Investigator Shockley relied to

establish probable cause to search came from his own observations rather than from those of an

informant.  Shockley observed much more than simply the defendant's possession of a container

that might contain drugs.  As Shockley watched from the passenger side of the vehicle during the

traffic stop, he saw the defendant engage in furtive gestures, holding something in his closed right

hand, the hand farthest away from where Pruett stood at the driver's door.  The defendant pushed

that hand under his right thigh in what Shockley believed, based on his training and experience, was

an effort to hide its contents.  In addition, when Shockley called Pruett's attention to the action and

Pruett had the defendant get out of the car, Shockley saw the defendant throw the object from his

hand to the seat behind him, a movement that once again appeared calculated to prevent Sergeant

Pruett from seeing the object.  When Investigator Shockley obtained the item immediately

thereafter, he could see that it was a small opaque container with a removable lid.  Shockley

explained that he had training and experience in the detection and storage of methamphetamine,

cocaine, and other controlled substances.  He further explained that although he had not seen an

identical container before, it was "not uncommon to have containers like this that are used to carry

[drugs]."  He also testified that on a number of prior occasions, he had found drugs "in containers

very similar" to the one seized from the defendant's vehicle. Finally, in addition to all these circumstances, Shockley knew at least that an informant had reported to Sergeant Lyle that very evening that the defendant "was heading to a residence in Truvine to cook methamphetamine."[5]

Thus, in the instant case, the defendant engaged in significant evasive actions as he attempted to conceal the container from Sergeant Pruett during the traffic stop. See Hollis, 216 Va. at 877, 223 S.E.2d at 889; see also Mavin v. Commonwealth, 31 Va. App. 161, 164-66, 521 S.E.2d 784, 786-87 (1999) (upholding the seizure of a prescription bottle where an officer recognized it as a type "frequently used to carry crack cocaine"; saw that it bore no label, "suggesting no current medical use"; and observed a passenger try to hide it). In addition to the defendant's furtive efforts to hide the container, Investigator Shockley knew from his training and experience that the container was of a size and type frequently used to conceal illegal drugs, and the officers had information from an informant that the defendant "was heading to a residence . . . to cook methamphetamine." See Smith, 56 Va. App. at 596-97, 602-03, 696 S.E.2d at 213, 216 (holding that probable cause existed where an officer had *both* an anonymous tip that the defendant and a second man were then engaging in a narcotics transaction in a particular apartment *and* his own personal observations of one of the men as he fled from the officer with "something white in his hand"); see also Lawson v. Commonwealth, 217 Va. 354, 355-58, 228 S.E.2d 685, 685-87 (1976) (holding that probable cause existed where the police received an anonymous tip that two men in a

---

[5] Sergeant Lyle testified briefly regarding what "information [he] had . . . received [from the informant] and shared with Investigator Shockley concerning the defendant." As the Commonwealth conceded at oral argument on appeal, this testimony did not make clear whether Sergeant Lyle had communicated to Shockley that the identity of the informant was known rather than anonymous, and the trial court made no express finding on this point. Under the applicable standard of review, we must presume that the information that Shockley received was that the informant was anonymous. Further, because the trial court did not state whether it found Sergeant Lyle's testimony credible, that same standard of review requires us to assume a failure of proof regarding whether *any* of the officers knew the identity of the informant.

particular car possessed heroin and then saw the men try to hide a small envelope that looked like "a 'nickel bag of marijuana'"). We hold that this evidence, accepted as credible by the trial court, viewed objectively, establishes the existence of probable cause as a matter of law.[6]

### III. CONCLUSION

The facts found by the trial court, viewed objectively, provided probable cause to believe the container that the defendant attempted first to hide and then to discard in his vehicle contained a controlled substance. No exigent circumstances were required to justify the warrantless seizure and search of that container because the container was in an operational motor vehicle. Therefore, we reverse the trial court's ruling suppressing the evidence and remand the case for further proceedings consistent with this opinion.

<u>Reversed and remanded.</u>

---

[6] The trial court's statement that "[t]here is no reason why . . . the officers couldn't have gotten a search warrant at that point if they thought there was enough evidence" constitutes a misunderstanding of the applicable law, which provides that where probable cause exists to search an operational vehicle or a container inside it, police may search the vehicle or container without first obtaining a warrant. See <u>Dyson</u>, 527 U.S. at 466-67; <u>Labron</u>, 518 U.S. at 940; <u>Duncan</u>, 55 Va. App. at 179, 684 S.E.2d at 840.