UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges Humphreys and O'Brien
Argued by videoconference

STERLING LAFETTA CLARK, II

                                        MEMORANDUM OPINION[*] BY
v.        Record No. 0824-20-2          CHIEF JUDGE MARLA GRAFF DECKER
                                        NOVEMBER 3, 2021

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Beverly W. Snukals, Judge

Matthew T. Paulk (Law Office of Matthew T. Paulk, on brief), for
appellant.

Matthew P. Dullaghan, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Sterling Lafetta Clark, II, appeals his conviction for possession of a controlled substance

with the intent to distribute, second offense, in violation of Code § 18.2-248(C).  He contends

that the trial court erred by denying his motion to suppress evidence because the stop followed

by the search of his person violated the Fourth Amendment of the United States Constitution.

For the reasons that follow, we affirm the judgment of the trial court.

I.  BACKGROUND[1]

On September 7, 2019, around 5:00 p.m., three City of Richmond detectives responded to

investigate a tip from a confidential informant.  The informant reported that a man was selling

narcotics at a particular intersection.  When the detectives arrived at the intersection, Detective

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Under the applicable standard of review, an appellate court views the evidence in the
light most favorable to the Commonwealth, as the prevailing party below.  See Hill v.
Commonwealth, 297 Va. 804, 808 (2019).

Michael Poerstel noticed the appellant leaving a store. Seeing no activity indicative of drug distribution, the detectives continued to surveille the area.

As the detectives watched, the confidential informant contacted Poerstel by phone and told him that the person selling drugs was wearing a black and white basketball jersey, white pants, and sneakers. The outfit description matched that of the appellant. Poerstel next saw the appellant come out of an alley with another man. The other person had an "unknown amount of currency" in his left hand.

Poerstel and the other two detectives approached the appellant on foot in the parking lot. The armed detectives wore black vests with the word "Police" printed on the front and back. The other man who had been with the appellant walked away. The detectives stopped and spoke with the appellant. As they talked, the detectives positioned themselves around him so he could not leave. The appellant "frequently" looked around and moved his hands around his "fanny pack" on his waist. Detective Poerstel told the appellant to stop reaching around his bag, but instead of complying the appellant continued to do so.

The detectives handcuffed the appellant and conducted a pat down of his person, but they found no weapons. Less than five minutes later, Detective O'Connell arrived with a police dog and conducted a "scan" of the appellant. Prior to the arrival of the canine unit, the detectives had not searched the appellant or told him that he was under arrest. The dog alerted to "the odor of narcotics." The detectives then searched the appellant, found cocaine in his bag, and informed him he was under arrest.

A grand jury indicted the appellant for possession of a controlled substance with the intent to distribute it, second offense. He filed a motion to suppress the evidence found during the search.

At the pre-trial suppression hearing, Detectives Sean Alston and Poerstel, two of the detectives who participated in the stop, testified about the area of the encounter.[2] Alston explained that the area had a history of drug sales and gun possession. Poerstel testified that narcotics were frequently sold in the area and that he had conducted narcotics investigations there in the past. He also stated that he had worked with and received information from the confidential informant for over a year before the encounter with the appellant. In the past, the informant had provided Poerstel with accurate information. Poerstel had used the informant to make controlled purchases of illegal narcotics and had obtained search warrants based on information "in conjunction with" those purchases. At the time he provided Poerstel with the information about the appellant, the informant had two pending charges for possession with intent to distribute cocaine and heroin.

The appellant argued to the trial court that the circumstances did not support the stop. He also contended that the armed detectives unlawfully arrested him when they surrounded him, handcuffed him, and conducted the pat down.

The court denied the motion to suppress, finding that the detectives had lawfully detained the appellant based on a reasonable, articulable suspicion that he was actively selling drugs and did not arrest him until later. The appellant entered a conditional guilty plea pursuant to Code § 19.2-254, preserving his right to appeal the alleged violation of his Fourth Amendment rights. The court accepted the guilty plea, found the appellant guilty, and sentenced him to twenty years in prison with seventeen years suspended.[3]

---

[2] Both Alston and Poerstel were narcotics detectives. Alston had worked for the police department for four years, and Poerstel had done so for six.

[3] The appellant was also before the trial court on a request by the Commonwealth to revoke a previously suspended sentence. The court revoked the suspension and resuspended all but one year of that sentence, giving the appellant one year to serve. The appellant does not challenge that sentence on appeal.

II.  ANALYSIS

The appellant argues that the search and seizure of his person violated his Fourth Amendment rights.  He contends that the police stopped him for an investigatory detention without reasonable suspicion and, alternatively, they arrested him without probable cause before conducting the search.[4]

Our consideration of these related challenges involves well-defined legal principles.  An appellant's claim that he "was seized in violation of the Fourth Amendment presents a mixed question of law and fact" that this Court reviews *de novo*.  Cole v. Commonwealth, 294 Va. 342, 354 (2017) (quoting Cost v. Commonwealth, 275 Va. 246, 250 (2008)).  "In making such a determination," the Court "give[s] deference to the factual findings of the [trial] court[] but . . . independently determine[s] whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment."  McCain v. Commonwealth, 275 Va. 546, 552 (2008).  In addition, "we give due weight to the inferences drawn from [the] facts by resident judges and local law enforcement officers."  Knight v. Commonwealth, 71 Va. App. 771, 782-83 (2020) (quoting Cantrell v. Commonwealth, 65 Va. App. 53, 56 (2015)).  Finally, the appellant bears the burden of establishing that the trial court erred in denying his motion to suppress.  See id. at 782.

Fourth Amendment jurisprudence recognizes two types of non-consensual and warrantless encounters between police and citizens.  The first category is "brief, minimally intrusive investigatory detentions based upon specific, articulable facts."  Middlebrooks v. Commonwealth, 52 Va. App. 469, 476 (2008) (quoting Blevins v. Commonwealth, 40 Va. App. 412, 420-21 (2003), aff'd, 267 Va. 291 (2004)).  The second category is "highly intrusive arrests and searches founded on probable cause."  Id. (quoting Blevins, 40 Va. App. at 421).

---

[4] The appellant does not argue that the duration of the stop was impermissibly extended under Rodriguez v. United States, 575 U.S. 348, 357 (2015).

A.  Reasonable Suspicion to Support an Investigatory Detention

The appellant argues that the detectives stopped him without a reasonable, articulable suspicion.  If "articulable facts support[] a reasonable suspicion" of unlawful conduct, a police officer may, without violating the Fourth Amendment, stop that person "briefly while attempting to obtain additional information."  Sidney v. Commonwealth, 280 Va. 517, 524 (2010) (quoting Hayes v. Florida, 470 U.S. 811, 816 (1985)); see Terry v. Ohio, 392 U.S. 1, 30 (1968).  The purpose of an investigatory stop or detention is "to permit an officer with reasonable suspicion of criminal activity to quickly confirm or dispel that suspicion."  Davis v. Commonwealth, 35 Va. App. 533, 539 (2001).  The reasonable-suspicion determination is based "not [on] what the officer thought" but, instead, on whether the objective "facts and circumstances apparent to him at the time of the stop were such as to create in the mind of a reasonable officer in the same position a suspicion that a violation of the law [had occurred,] was occurring[,] or was about to occur."  Mason v. Commonwealth, 291 Va. 362, 368 (2016).

"[T]here are no bright line rules to follow when determining whether a reasonable and articulable suspicion exists . . . ."  Middlebrooks, 52 Va. App. at 479 (first alteration in original) (quoting Hoye v. Commonwealth, 18 Va. App. 132, 134-35 (1994)).  It "is more than an unparticularized suspicion or 'hunch.'"  Sidney, 280 Va. at 523 (quoting Illinois v. Wardlow, 528 U.S. 119, 123-24 (2000)).  However, "[t]he likelihood of criminality 'need not rise to the level required for probable cause[,] and it falls considerably short of satisfying a preponderance of the evidence standard' applicable in other contexts."  Raab v. Commonwealth, 50 Va. App. 577, 581 (2007) (*en banc*) (quoting United States v. Arvizu, 534 U.S. 266, 274 (2002)).

In the instant case, the reason for the stop began with a tip provided by a confidential informant.  In evaluating whether the circumstances supported a police encounter with the appellant based at least in part on information received from an informant, the informant's

"reliability and basis of knowledge" are "highly relevant." Byrd v. Commonwealth, 57 Va. App. 589, 597 (2011) (*en banc*) (quoting Jones v. Commonwealth, 277 Va. 171, 179 (2009)). One factor that has bearing on the reliability of an informant is whether the individual is a citizen-informer or a confidential criminal informant. See Polston v. Commonwealth, 24 Va. App. 738, 745 (1997) (allowing an inference of reliability for citizen informers without additional supporting circumstances but requiring supporting circumstances for information from criminal informants), aff'd on other grounds, 255 Va. 500 (1998).

It is widely recognized that confidential informants often are entangled in criminality. 2 Wayne R. La Fave, Search and Seizure § 3.3, at 120 (6th ed. 2020); Michael A. Rebell, The Undisclosed Informant and the Fourth Amendment: A Search for Meaningful Standards, 81 Yale L.J. 703, 712 (1972). The reliability of a tip from a criminal informer "may be established in many different ways." Russell v. Commonwealth, 33 Va. App. 604, 611 (2000). Those avenues of proof include evidence that "the informer has previously given reliable information" or "the informer previously has worked with the police and has made controlled buys or worked in narcotic surveillance or other law enforcement efforts." Id. (quoting Polston, 24 Va. App. at 745). "If the informant has provided accurate information on past occasions, he may be presumed trustworthy on subsequent occasions." Byrd, 57 Va. App. at 599 (quoting United States v. Angulo-Lopez, 791 F.2d 1394, 1397 (9th Cir. 1986)). In addition, a criminal "informant's interest in obtaining leniency create[s] a strong motive to supply accurate information." United States v. Miller, 925 F.2d 695, 699 (4th Cir. 1991).

In this case, Detective Poerstel testified that he had previously worked with and received information from the confidential informant for over a year. The detective had used the informant to make controlled purchases of illegal narcotics and had obtained search warrants based on information provided by him. Historically, the informant had provided Poerstel with

accurate information. An informant's past reliability in providing information regarding crimes is a factor supporting a finding of the even higher standard of probable cause. Russell, 33 Va. App. at 610-11; see also Johnson v. Commonwealth, 20 Va. App. 49, 54-55 (1995) (analyzing the reliability of two confidential informants); cf. Harris v. Commonwealth, 276 Va. 689, 695-96 (2008) (holding that an officer who received only readily observable information from an *anonymous* informant did not have reasonable suspicion). The facts regarding the instant informant's two pending criminal charges also were relevant to the trial court's evaluation of the reliability of the information he provided to police. Poerstel told the informant that he "would speak to the prosecutors" on his or her behalf in light of the information provided. See Miller, 925 F.2d at 699. These factors were for the trial court to consider in conjunction with the other circumstances surrounding the stop and detention.

The detectives observed the appellant in real time at the identified intersection wearing an outfit described by the informant. See generally Byrd, 57 Va. App. at 597 (recognizing "[p]olice corroboration of an informant's tip" as providing indicia of reliability). They approached the appellant in an area known for drug distribution, the offense alleged by the informant. See generally Whitaker v. Commonwealth, 279 Va. 268, 276 (2010) ("[W]hile a suspect's presence in a high crime area, standing alone, is not enough to support a reasonable particularized suspicion, it is a relevant contextual consideration . . . ."). When the detectives approached the appellant, they saw a second man walk away from him with currency in his hand. See generally Welshman v. Commonwealth, 28 Va. App. 20, 37 (1998) (*en banc*) (recognizing generally that illegal drug sales are often cash transactions).

Based on these circumstances, articulable facts supported a reasonable suspicion to briefly investigate whether the appellant had illegal narcotics with the intent to distribute them or was engaged in selling illegal narcotics as described by the informant. See Sidney, 280 Va. at

524-25.  The facts and circumstances apparent to the detectives at the time of the stop "were such as to create in the mind of . . . reasonable officer[s] in the same position a suspicion that a violation of the law [had occurred,] was occurring[,] or was about to occur."  Mason, 291 Va. at 368.  Consequently, the circumstances permitted the detectives to lawfully seize and detain the appellant briefly to determine whether he possessed illegal drugs with the intent to sell them.

### B.  Degree of Restraint

The appellant alternatively contends that the level of detention, including surrounding him, placing him in handcuffs, and patting him down, constituted an arrest and was not supported by probable cause.

Well-established legal principles also guide our analysis of this assignment of error.  "While the 'investigative methods employed [by law enforcement] should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time,' the 'scope of the intrusion permitted will vary [with each case].'"  Thomas v. Commonwealth, 16 Va. App. 851, 856-57 (1993) (second alteration in original) (quoting Florida v. Royer, 460 U.S. 491, 500 (1983)), adopted upon reh'g en banc, 18 Va. App. 454, 455 (1994).  The means must be "reasonably related in scope to the circumstances which justified the interference in the first place."  Hiibel v. Sixth Jud. Dist. Ct., 542 U.S. 177, 185 (2004) (quoting United States v. Sharpe, 470 U.S. 675, 682 (1985)).

Additionally, "[a] police officer [is] not . . . required to ask of a person whom he reasonably suspects is engaging in criminal activity . . . to explain his conduct and run the risk of receiving a bullet in answer to his questions."  Simmons v. Commonwealth, 217 Va. 552, 556 (1977).  Once an officer has lawfully stopped a suspect, "he is 'authorized to take such steps as [are] reasonably necessary to protect [his and others'] personal safety and to maintain the status quo during the course of the [detention].'"  Kidd v. Commonwealth, 38 Va. App. 433, 444

(2002) (alterations in original) (quoting Welshman, 28 Va. App. at 34).  "Brief, complete deprivations of a suspect's liberty," including handcuffing and the display of weapons, "'do not convert a stop and frisk into an arrest so long as the methods of restraint used are reasonable to the circumstances.'"[5]  See Thomas, 16 Va. App. at 857 (quoting United States v. Crittendon, 883 F.2d 326, 329 (4th Cir. 1989)).

"Reasonableness is judged from the perspective of a[n objectively] reasonable officer on the scene allowing for the need of split-second decisions and without regard to the officer's [subjective] intent or motivation."  Williams v. Commonwealth, 71 Va. App. 462, 476 (2020) (alterations in original) (quoting Thompson v. Commonwealth, 54 Va. App. 1, 7 (2009)).  Whether the degree of restraint was reasonable is ultimately a question of law reviewed *de novo*.  See Murphy v. Commonwealth, 264 Va. 568, 573 (2002); Thomas, 16 Va. App. at 857 (permitting handcuffing during a detention if doing so is reasonable under the circumstances).

The detectives' actions in surrounding the appellant, handcuffing him, and patting him down for weapons were objectively reasonable on the facts of the case, viewed in the light most favorable to the Commonwealth.  During the course of the encounter, the detectives gathered information adding to a reasonable belief that the appellant possessed a controlled substance with the intent to distribute it.

The detectives approached the appellant based on information provided by a reliable confidential informant who had consistently provided accurate information to Detective Poerstel

---

[5] The appellant cites numerous cases to support the proposition that the use of handcuffs is permissible during an investigatory stop only if the encounter occurs under specific conditions, which he argues are not present here.  However, the decision of whether the methods of restraint were reasonable is not determined by any bright-line rule.  See Commonwealth v. Campbell, 294 Va. 486, 494 (2017) (noting that the United States Supreme Court has "consistently eschewed bright-line rules, instead emphasizing the fact-specific nature of the reasonableness inquiry" (quoting Ohio v. Robinette, 519 U.S. 33, 39 (1996))).  Instead, the Court conducts its analysis by looking at the circumstances involved in the specific detention and determines whether the officers' actions were reasonable under those facts.  Thomas, 16 Va. App. at 857.

for over a year and had engaged in controlled narcotics buys for him. The appellant matched the description of the drug dealer provided by the informant. As the detectives spoke with the appellant, Poerstel noticed him frequently looking in both directions and moving his hands around a fanny pack that was attached to his waist. Poerstel knew that firearms are often associated with drug distribution and specifically that "fanny packs" are used to carry firearms. See generally Freeman v. Commonwealth, 20 Va. App. 658, 661 (1995) (noting that a trained law enforcement officer may be able to identify behavior as criminally significant that would appear innocent to an untrained observer). As a result, he asked the appellant to stop reaching around the fanny pack. Despite the demand, the appellant repeatedly continued to move his hand around the bag. Consequently, Poerstel told Detectives Alston and Fernandez to handcuff appellant and conduct a pat down for weapons. See Beasley v. Commonwealth, 60 Va. App. 381, 397 (2012) (noting that multiple furtive gestures could "suggest[] . . . a concealed firearm"). In this situation, it was reasonable for a person in the detectives' position to believe that the appellant posed a risk to their safety or the safety of others. See generally Johnson, 20 Va. App. at 55 (recognizing a link between weapons and distribution of illegal drugs). The fact that three armed detectives were present may have reduced but did not remove the threat that the appellant's possession of a weapon could have presented.[6] Cf. Young v. Prince George's Cnty., 355 F.3d 751, 755-56 (4th Cir. 2004) (holding that "taking" an armed individual "to the ground"

_____

[6] The appellant also argues that the detectives acted unreasonably in keeping the handcuffs on him after they completed the pat down. To the extent that the appellant preserved this challenge below, we conclude that the detectives were not required to remove the handcuffs after the pat down while the investigation was ongoing. See Luginbyhl v. Commonwealth, 48 Va. App. 58, 64 (2006) (*en banc*) (recognizing that "an appellate court may structure a decision upon an 'assuming but not deciding' basis"). The fact that the officers did not discover any weapons during the pat-down search did not eliminate the risk of violence. Compare Chase v. State, 144 A.3d 630, 647 (Ariz. 2016), with State v. Boteo-Flores, 280 P.3d 1239, 1242-43 (2012), and Reynolds v. State, 592 So.2d 1082, 1085 (Fla. 1992).

was reasonable even though the person was handcuffed behind his back), abrogated on other grounds by Wilkins v. Gaddy, 559 U.S. 34 (2010).

These circumstances support the conclusion that surrounding the appellant, handcuffing him, and frisking him were reasonable actions under the Fourth Amendment. See, e.g., Johnson, 20 Va. App. at 55. Because these methods of restraint were reasonable, the encounter remained an investigative detention at the time of the challenged pat down and did not amount to an arrest.[7] Therefore, we hold that the degree of restraint and pat down were proper.

### III. CONCLUSION

The totality of the circumstances supports the conclusion that the detectives had a reasonable and articulable suspicion of illegal activity supporting the investigatory detention. Further, the record establishes that when the detectives initially detained the appellant, the encounter was an investigative detention and not an arrest. The detectives acted reasonably under Fourth Amendment jurisprudence by stopping the appellant, handcuffing him, and conducting the pat down. Consequently, the trial court did not err in denying the appellant's motion to suppress. For these reasons, we affirm the judgment of the trial court.

Affirmed.

---

[7] Based on this conclusion, we do not reach the issue of whether the detectives had probable cause to support an arrest.