COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Chaney, Frucci and Senior Judge Annunziata
Argued by videoconference


MARCUS ERIC SEARS
                                              MEMORANDUM OPINION* BY
v.        Record No. 1886-23-4                JUDGE STEVEN C. FRUCCI
                                              JANUARY 21, 2025
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
James A. Willett, Judge

Taso R. Saunders for appellant.

Stephen J. Sovinsky, Assistant Attorney General (Jason S. Miyares,
Attorney General; Collin Chayce Crookenden, Assistant Attorney
General, on brief), for appellee.


A jury convicted Marcus Eric Sears of three counts of possessing with the intent to

distribute a Schedule I or II controlled substance (PWID), perjury, forging a public record, and

identity fraud. On appeal, Sears argues that the circuit court erred by denying his motion to

suppress evidence that police found in a vehicle. He also challenges the sufficiency of the

evidence to support his PWID convictions.[1] For the following reasons, we affirm the circuit

court's judgment.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Although Sears's second assignment of error broadly challenges the sufficiency of the
evidence to support his "convictions," his argument focuses only on his PWID convictions. An
opening brief must contain "[t]he standard of review and the argument (including principles of
law and authorities) relating to each assignment of error." Rule 5A:20(e). "Unsupported
assertions of error 'do not merit appellate consideration.'" *Bartley v. Commonwealth*, 67
Va. App. 740, 744 (2017) (quoting *Jones v. Commonwealth*, 51 Va. App. 730, 734 (2008)).
Sears's brief does not reference any law or present argument related to his forgery or identity
fraud convictions, and although he cites the perjury statute, he presents no argument addressing

BACKGROUND

"[W]e recite the evidence below 'in the "light most favorable" to the Commonwealth, the prevailing party in the trial court.'" *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

In 2019, Detective Butterworth worked on the Prince William County Police Department's "Street Crimes Unit." After two years in that position, he had developed a relationship with a "reliable" confidential informant ("CI"). The CI's relationship with the police began after he was "charged with narcotics offenses." His charges had been "reduced," however, and he did not have any pending charges in June 2019. In total, the CI had given Detective Butterworth "reliable information or set up . . . undercover" "narcotics purchases" five times. During each purchase, the CI provided police with the expected "weights and [contraband] items." In fact, the CI had never provided "unreliable information."

On June 28, 2019, the CI told Detective Butterworth that a man named "Sean Jones" would be "selling narcotics" at the Westgate Plaza in Prince William County. The CI described Jones as a "heavyset African American with long braids" and said that Jones would be in a SUV with a license plate that read, "Lady Boss" or "Boss Lady." Detective Butterworth did not know whether the CI meant that the suspect was in the Westgate Plaza area or "would be" in the future. Nevertheless, he, Detective Bowler, Detective Deshazo, and one or two other officers drove to Westgate Plaza "to conduct surveillance."

_____

that conviction. Thus, any argument related to those convictions is waived. *Id.* (citing *Parks v. Parks*, 52 Va. App. 663, 664 (2008)).

After about 10 or 15 minutes of surveillance, a SUV arrived at the Westgate Plaza and stopped in a parking space. Its license plate read, "LDYBOSS." Detective Butterworth parked his vehicle behind the SUV, blocking it in. He then approached the passenger side with Detective Bowler while other officers approached the driver's side. Detective Butterworth did not remember if his weapon was "drawn" but testified it was "common practice" for "weapons to be drawn" when they believed someone was selling narcotics. Detective Bowler testified that their initial intent was only to detain the occupants based on the CI's tip and then arrest them if the officers developed probable cause.

A woman was in the driver's seat, and Sears, who identified himself to the officers as "Sean Jones," was in the front passenger seat. As the officers approached, Detective Bowler saw Sears "stuffing something . . . around his crotch area," and after they opened the SUV's door, they immediately smelled the odor of phencyclidine (PCP), a Schedule II controlled substance, "coming from inside." The officers detained the SUV's occupants and searched the vehicle. As a result, they found suspected controlled substances.

Before trial, Sears moved to suppress the evidence found during the search of the SUV. He argued that the officers arrested him without probable cause when they parked behind the SUV, blocking it in, and approached with their weapons drawn. He contended that his movement was "[u]ndeniably" restricted, "comparable to a custodial arrest," and not a brief investigatory detention. Moreover, he asserted that the CI's tip was unreliable given that it provided an incorrect name and "tag number." Indeed, he maintained that the CI's tip was insufficient to provide the officers a reasonable articulable suspicion, let alone probable cause.

The circuit court held that the officers lawfully seized Sears when they parked behind and blocked the SUV because they had a reasonable suspicion, based on the "detailed information" from the CI, that he was distributing controlled substances. The circuit court found that the CI was

historically reliable and that the officers had verified the tip's location, identified vehicle, license plate number, and physical description of the suspect. The court further ruled that given the reasonable suspicion, the officers could reasonably believe the suspect was "armed and dangerous," thus justifying their approach with weapons drawn. Moreover, the court held that the officers could open the door to "control the situation" or "frisk . . . the vehicle" for weapons, and, after smelling the PCP, they had probable cause to arrest. Accordingly, it denied the motion to suppress.

At trial, Detective Butterworth recounted the circumstances regarding his communication with the CI and encounter with Sears at the Westgate Plaza. Detective Bowler also testified, without objection, that as he approached the passenger side of the SUV, Sears was "moving his hands toward his waist," and that "he was probably trying to hide narcotics" as he was "there for a narcotics deal." While searching the SUV, police found three cell phones, one on the driver's seat, one on the front passenger floorboard, and the last on the ground outside the passenger door.

Police also found plastic bags on the front passenger seat and on the ground outside the passenger door that contained a white powdery substance that subsequent forensic analysis determined was cocaine. Cocaine was also in plastic bags in plain view on the floorboard in front of the passenger seat. In total, there were six separate bags containing over 31 grams of cocaine. Detective Butterworth, whom the circuit court qualified as an expert in "narcotics distribution," testified that 3.5 grams is the typical amount of cocaine that is consistent with personal use. Moreover, he explained that cocaine is typically "snorted" or "smoked" using a glass pipe, but no such pipe was in the SUV. Thus, he concluded that the possession of over 31 grams of cocaine without paraphernalia to consume it was inconsistent with personal use. Detective Bowler, whom the circuit court also qualified as an expert in "narcotics distribution," similarly testified that possessing "roughly 30 grams of cocaine" was inconsistent with personal use.

Police also found a red box containing a vial of PCP between the front passenger seat and center console. A green and white cigarette box was in the front passenger "door handle." Detectives Butterworth and Bowler both explained that "PCP is sold in the form of . . . dippers," where a cigarette is dipped into a vial and sold for $10 or $15 dollars. The detectives testified that the vial found in the SUV contained a large amount of PCP (enough to dip more than a pack of cigarettes) and was inconsistent with personal use.

Next to the cigarette box in the door handle was a plastic bag and piece of folded paper that contained a solid material later determined to be fentanyl. Additional fentanyl was in a plastic bag on the passenger's side floorboard. In total, the SUV contained about 2.5 grams of fentanyl. Detective Buttersworth explained that fentanyl is injected, snorted, or "burned on aluminum foil and inhaled," but police found no such devices to consume the fentanyl inside the SUV. The fentanyl's packaging and presence alongside the other narcotics, and the lack of paraphernalia to consume the fentanyl, led Detective Butterworth to conclude that its possession was inconsistent with personal use. Detective Butterworth also admitted, however, that other items typically indicative of narcotics distribution, including firearms and large amounts of cash, were not in the SUV.

Sears moved to strike the evidence at the close of the Commonwealth's case-in-chief and the close of all the evidence; the circuit court denied both motions in relevant part. After closing argument, the jury convicted Sears of three counts of PWID, perjury, forging public records, and identity fraud, second or subsequent offense. After a sentencing hearing, the circuit court sentenced Sears to a total of 39 years' incarceration, with 31 years suspended. Sears appeals.

ANALYSIS

I. *Motion to Suppress*

Sears argues that the circuit court erroneously denied his motion to suppress because the officers' "seizure of the [SUV] in which [he] was a passenger was neither supported by reasonable

suspicion or probable cause." He contends that the CI's reliability was not adequately demonstrated or verified, as the SUV's license plate was "similar yet not the same." He also asserts that the CI incorrectly told the officers that "Sean Jones" would be at the Westgate Plaza "in the present tense," but he was not there when the officers arrived. Thus, he concludes that the officers never developed probable cause to arrest Sears and search the SUV.

"When considering whether to affirm the denial of a pretrial suppression motion, an appellate court reviews not only the evidence presented at the pretrial hearing but also the evidence later presented at trial." *Hill v. Commonwealth*, 297 Va. 804, 808 (2019) (quoting *Commonwealth v. White*, 293 Va. 411, 414 (2017)). The appellant "bears the burden to show that the [circuit] court committed reversible error by denying [the] motion to suppress." *Ayala v. Commonwealth*, 79 Va. App. 41, 49 (2023) (quoting *Keepers v. Commonwealth*, 72 Va. App. 17, 33 (2020)). We "review[] the legal portions of" the circuit court's ruling de novo. *Id.* (citing *Thomas v. Commonwealth*, 72 Va. App. 560, 574 (2020)). The circuit court's "factual findings," however, "'will not be set aside . . . unless plainly wrong.'" *Id.* (alteration in original) (quoting *Tirado v. Commonwealth*, 296 Va. 15, 27-28 (2018)).

A. *The initial seizure was supported by reasonable, articulable suspicion.*

The Fourth Amendment of the United States Constitution does not "forbid[] . . . all searches and seizures, but unreasonable searches and seizures." *Terry v. Ohio*, 392 U.S. 1, 9 (1968) (quoting *Elkins v. United States*, 364 U.S. 206, 222 (1960)); *see* U.S. Const. amend. IV. Thus, if "articulable facts support[] a reasonable suspicion" of unlawful conduct, a police officer may, without violating the Fourth Amendment, stop that person "briefly while attempting to obtain additional information." *Sidney v. Commonwealth*, 280 Va. 517, 524 (2010) (quoting *Hayes v. Florida*, 470 U.S. 811, 816 (1985)). The purpose of such an investigatory stop or detention is "to

- 6 -

permit an officer with reasonable suspicion of criminal activity to quickly confirm or dispel that suspicion." *Davis v. Commonwealth*, 35 Va. App. 533, 539 (2001).

"[S]topping a motor vehicle and detaining the operator constitute[s] a 'seizure' within the meaning of the Fourth Amendment." *Mitchell v. Commonwealth*, 73 Va. App. 234, 246 (2021) (first alteration in original) (quoting *Lowe v. Commonwealth*, 230 Va. 346, 349 (1985)). "The stop 'seizes' all occupants of the vehicle." *Id.* (quoting *Brendlin v. California*, 551 U.S. 249, 255 (2007)); *see also Heien v. North Carolina*, 574 U.S. 54, 60 (2014) (stating "[a] traffic stop for a suspected violation of law is a 'seizure' of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment"). "Nevertheless, an officer may stop a vehicle, effectively seizing its occupants, when 'there is at least articulable and reasonable suspicion . . . that either the vehicle or an occupant is otherwise subject to seizure for violation of law.'" *Mitchell*, 73 Va. App. at 246 (quoting *Delaware v. Prouse*, 440 U.S. 648, 663 (1979)).

"There are no bright line rules" for "determining whether a reasonable and articulable suspicion exists to justify an investigatory stop." *Id.* (quoting *Hoye v. Commonwealth*, 18 Va. App. 132, 134-35 (1994)). Generally, reasonable suspicion is based "not [on] what the officer thought" but on whether the objective "facts and circumstances apparent to him at the time of the stop were such as to create in the mind of a reasonable officer in the same position a suspicion that a violation of the law" had occurred, was occurring, or was about to occur. *Mason v. Commonwealth*, 291 Va. 362, 368 (2016). It "is more than an unparticularized suspicion or 'hunch.'" *Sidney*, 280 Va. at 523 (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123-24 (2000)). However, "[t]he likelihood of criminality 'need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard' applicable in other contexts." *Raab v. Commonwealth*, 50 Va. App. 577, 581 (2007) (en banc) (quoting *United States v. Arvizu*, 534 U.S. 266, 274 (2002)).

In the case at hand, it is uncontested that police seized the SUV and its occupants when they parked behind it, blocking it in. The Commonwealth argues that the seizure was justified by the CI's tip. When evaluating whether police had reasonable, articulable suspicion based on a CI's tip, the informant's "reliability and basis of knowledge" are "highly relevant." *Byrd v. Commonwealth*, 57 Va. App. 589, 597 (2011) (en banc) (quoting *Jones v. Commonwealth*, 277 Va. 171, 179 (2009)). The reliability of a tip from an "informer [who] is a 'criminal' . . . [that] is conveyed [to the jury] in the form of a police officer's hearsay testimony . . . may be established in many different ways." *Russell v. Commonwealth*, 33 Va. App. 604, 611 (2000). Those avenues include proof that "the informer has previously given reliable information [or] . . . has worked with the police and has made controlled buys or worked in narcotic surveillance." *Id.* (quoting *Polston v. Commonwealth*, 24 Va. App. 738, 745 (1997)). "If the informant has provided accurate information on past occasions, he may be presumed trustworthy on subsequent occasions." *Byrd*, 57 Va. App. at 599.

Here, the uncontested evidence demonstrated that the CI had provided police "reliable information or set up . . . undercover" "narcotics purchases" five times. In each instance, the CI provided police with the expected "weights and [contraband] items," and he had never provided "unreliable information." Although his relationship with police began after he was "charged with narcotics offenses," he did not have any pending charges when he provided the tip in this case. Thus, given the CI's unblemished record of providing accurate information on past occasions, the officers could presume he was trustworthy in the present case when he said that a man named Sean Jones would be "selling narcotics" at the Westgate Plaza in Prince William County from a SUV with a license plate that read, "Lady Boss" or "Boss Lady." Indeed, 10 to 15 minutes into the surveillance, a SUV with a license plate that read, "LDYBOSS," arrived at Westgate Plaza.

Given those circumstances, the police had a reasonable, articulable suspicion that criminal activity "*may* be afoot." *Alston v. Commonwealth*, 40 Va. App. 728, 738 (2003) (quoting *Harmon v. Commonwealth*, 15 Va. App. 440, 444 (1992) (finding that "actual proof that criminal activity *is* afoot is not necessary")). Accordingly, they could seize the SUV's occupants "in order to determine [their] identity or to maintain the status quo momentarily while obtaining more information." *Id.* (quoting *Adams v. Williams*, 407 U.S. 143, 146 (1972)).[2]

B. *The officers had probable cause to search the SUV.*

While the Fourth Amendment of the United States Constitution generally requires that a search "be conducted pursuant to a warrant issued by an independent judicial officer," various well-established exceptions to the warrant requirement exist, including the automobile exception. *California v. Carney*, 471 U.S. 386, 390 (1985); *Collins v. Virginia*, 584 U.S. 586, 591 (2018).

---

[2] To the extent Sears argues that the officers arrested him when they seized the vehicle and approached with their weapons drawn, the record demonstrates that the initial seizure was not an arrest. It is well-established that officers may detain a vehicle's occupants "beside an automobile until the completion of a lawful stop" without converting the stop into an arrest. *McCain v. Commonwealth*, 275 Va. 546, 553 (2008) (first quoting *Harris v. Commonwealth*, 27 Va. App. 554, 562 (1998); and then citing *Maryland v. Wilson*, 519 U.S. 408, 413-14 (1997)). Further, if the police have stopped a suspect "who [is] reported to be armed and dangerous," they may approach the car with their weapons drawn without transforming the encounter into an arrest. *United States v. Hensley*, 469 U.S. 221, 235 (1985) (citing *Michigan v. Long*, 463 U.S. 1032, 1049-50 (1983)). *See also United States v. Perate*, 719 F.2d 706, 708-09 (4th Cir. 1983) (holding that police had seized, but not arrested, the defendant when they "blockade[d]" his limousine and approached with "drawn weapons," despite one officer's belief that the seizure was an arrest; the officers reasonably acted to "neutralize[] potential danger" while conducting an investigatory stop).

Here, as explained above, the police stopped the SUV and seized its occupants based on reasonable, articulable suspicion that they had driven to the Westgate Plaza to distribute controlled substances. Firearms are a "recognized tool of the drug trade." *Scott v. Commonwealth*, 55 Va. App. 166, 174 (2009) (citing *Dixon v. Commonwealth*, 11 Va. App. 554, 557 (1991)). Sears acknowledges that principle when he argues that the absence of a firearm in this case was evidence that he lacked the intent to distribute. Nevertheless, the officers had reasonable suspicion that the SUV's occupants were engaged in the drug distribution. Accordingly, they reasonably could believe that the occupants were armed. Thus, the seizure was not converted into an arrest when the officers approached the SUV with their weapons drawn and opened the door to detain its occupants outside the vehicle, thereby ensuring their safety and maintaining the status quo until they could confirm or dispel their suspicions. *Hensley*, 469 U.S. at 224, 235; *McCain*, 275 Va. at 553.

Due to the "pervasive regulation of vehicles capable of traveling on the public highways" and their "ready mobility," officers may lawfully search a motor vehicle without a warrant as long as they have probable cause . . . that it contains contraband. *Collins*, 584 U.S. at 591 (quoting *Carney*, 471 U.S. at 390, 392); *see Fore v. Commonwealth*, 220 Va. 1007, 1010-11 (1980). "Probable cause . . . exists when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Curley v. Commonwealth*, 295 Va. 616, 622 (2018) (quoting *Jones*, 277 Va. at 178). "Probable cause takes into account the 'totality of the circumstances surrounding the search.'" *Bunch v. Commonwealth*, 51 Va. App. 491, 495 (2008) (quoting *Cost v. Commonwealth*, 275 Va. 246, 251 (2008)). The standard "does not demand any showing that [the officer's] belief be correct or more likely true than false." *Evans v. Commonwealth*, 290 Va. 277, 287 (2015) (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983)). Rather, "the proper inquiry focuses on what an objective officer could reasonably believe." *Id.* (quoting *United States v. Grissett*, 925 F.2d 776, 778 (4th Cir. 1991)).

This Court has previously "embrace[d] th[e] so-called 'plain smell' doctrine," accepting the "nearly incontestable proposition" that "[u]nder the Fourth Amendment, 'probable cause may be supported by the detection of distinctive odors, as well as by sight.'" *Bunch*, 51 Va. App. at 496 (quoting *United States v. Haynie*, 637 F.2d 227, 234 (4th Cir. 1980)). Here, officers had a reasonable, articulable suspicion that criminal activity may be afoot when they approached the vehicle, a detective saw Sears "stuffing something . . . around his crotch area," and officers immediately smelled PCP, a controlled substance, when they opened the SUV's door "coming from inside." Thus, they had probable cause to believe that the SUV contained evidence of a crime, and their search of the vehicle, wherein they found all of the evidence that the motion to suppress contested, was lawful. Accordingly, the circuit court did not err by denying the motion to suppress.

II. *Sufficiency of the Evidence*

Sears argues that his PWID convictions should be overturned because (1) he did not possess the narcotics with knowledge of their illegal nature and character, and (2) he did not possess the requisite intent to distribute. He contends that his convictions were based solely on his proximity to the controlled substances and their "quantity and packaging." He asserts that "[t]he fentanyl, alone or in conjunction with the other substances, even if possessed by [him] did not support a conclusion of an intent to distribute." Moreover, he maintains there were no indicia of distribution, such as "large sums of cash, scales, packaging materials, records and documents, firearms," or incriminating statements.

"In reviewing a challenge to the sufficiency of the evidence to support a conviction, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Melick v. Commonwealth*, 69 Va. App. 122, 144 (2018) (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 257 (2003) (en banc)). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Raspberry v. Commonwealth*, 71 Va. App. 19, 29 (2019) (quoting *Burrous v. Commonwealth*, 68 Va. App. 275, 279 (2017)). "In conducting our analysis, we are mindful that 'determining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear and see them as they testify.'" *Id.* (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 536 (2015)). "Thus, we will affirm the judgment of the trial court unless that judgment is 'plainly wrong or without evidence to support it.'" *Id.* (quoting *Kelly*, 41 Va. App. at 257).

A. *Sears possessed the controlled substances and knew of their illegal nature and character.*

"[P]ossession of a controlled substance may be actual or constructive." *McGee v. Commonwealth*, 4 Va. App. 317, 322 (1987) (citing *Archer v. Commonwealth*, 225 Va. 416, 418 (1983)). "Constructive possession may be established by 'evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and the character of the [contraband] and that it was subject to his dominion and control.'" *Hall v. Commonwealth*, 69 Va. App. 437, 448 (2018) (quoting *Logan v. Commonwealth*, 19 Va. App. 437, 444 (1994) (en banc)). "[T]he issue [of what constitutes constructive possession] is largely a factual one." *Smallwood v. Commonwealth*, 278 Va. 625, 630 (2009) (second alteration in original) (quoting *Ritter v. Commonwealth*, 210 Va. 732, 743 (1970)). Accordingly, the circuit court's judgment "will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it." *Epps v. Commonwealth*, 66 Va. App. 393, 402 (2016) (quoting *Martin v. Commonwealth*, 4 Va. App. 438, 443 (1987)).

Although "ownership or occupancy alone is insufficient to prove knowing possession of [contraband] located on the premises or in a vehicle," circumstantial evidence coupled with ownership or occupancy often establishes the constructive possession of such contraband. *Burchette v. Commonwealth*, 15 Va. App. 432, 435 (1992). "[C]ircumstantial evidence is [as] competent and is entitled to as much weight as direct evidence[,] provided [it] is sufficiently convincing." *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (first alteration in original) (quoting *Dowden v. Commonwealth*, 260 Va. 459, 468 (2000)). "While no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances . . . may lead a reasonable mind irresistibly to a conclusion." *Id.* at 512-13 (alteration in original) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)). Moreover, "[b]y finding the

- 12 -

defendant guilty, . . . the factfinder 'has found by a process of elimination that the evidence does not contain a reasonable theory of innocence.'" *James v. Commonwealth*, 53 Va. App. 671, 681 (2009) (quoting *Haskins v. Commonwealth*, 44 Va. App. 1, 9 (2004)).  That conclusion "is itself a 'question of fact,' subject to deferential appellate review." *Id.*

Consistent with those principles, it is well-established that a defendant's immediate proximity to contraband that is plainly visible is sufficient to support a finding of constructive possession, even when others are present.  *See, e.g.*, *Bolden v. Commonwealth*, 275 Va. 144, 149 (2008) (finding that a defendant constructively possessed "open and obvious" contraband that was "located in immediate proximity to where [the defendant] had been sitting"); *Brown v. Commonwealth*, 5 Va. App. 489, 492-93 (1988) (holding that a defendant constructively possessed cocaine that was in "plain view" on a bed and "within arm's reach" of the defendant even though two other men were sitting on the bed on either side of the cocaine).

In addition to demonstrating constructive possession of the contraband, the evidence needed to prove that Sears had "knowledge of its [illegal] nature and character." *Yerling v. Commonwealth*, 71 Va. App. 527, 534 (2020) (emphasis omitted) (quoting *Young v. Commonwealth*, 275 Va. 587, 591 (2008)).  That "knowledge may be shown by evidence of the acts, statements or conduct of the accused." *Young*, 275 Va. at 591.  Importantly, the evidence need only show that a defendant was aware that he possessed "a controlled substance," as the "General Assembly has chosen not to excuse a defendant who knows he is possessing a controlled substance but is unaware or perhaps mistaken as to the precise identity of the substance." *Sierra v. Commonwealth*, 59 Va. App. 770, 779, 783 (2012).

Here, the evidence demonstrates that Sears was surrounded by controlled substances that were plainly visible and emitting an obvious odor when the officers approached the SUV and detained him.  To his left, between him and the center console, was a box that contained a vial of

odorous PCP. To his right, in the passenger door handle, was a pack of cigarettes he could dip into the PCP to sell as "dippers." Also, to his right, immediately next to the cigarettes, were baggies containing fentanyl. At his feet and in plain view on the floorboard were multiple baggies containing cocaine. *See Brown*, 5 Va. App. at 492-93 (holding that a defendant constructively possessed cocaine that was in "plain view" on a bed and "within arm's reach" of the defendant even though two other men were sitting on the bed on either side of the cocaine).

Moreover, the record demonstrated that as the police approached the SUV, Sears was "moving his hands toward his waist" like he was "trying to hide narcotics." He then provided the police with a false name. "[I]t is . . . universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, *concealment*, *assumption of a false name*, and related conduct are admissible as evidence of consciousness of guilt, and thus of guilt itself." *Palmer v. Commonwealth*, 14 Va. App. 346, 348-49 (1992) (first alteration in original) (emphasis added). Viewed in the light most favorable to the Commonwealth, the plainly visible and odorous controlled substances that surrounded Sears, his furtive actions as police approached the vehicle, and assumption of a false name to avoid criminal liability would allow a rational trier of fact to conclude that Sears constructively possessed the controlled substances with knowledge of their illegal nature and character.

B. *Sears possessed the requisite intent to distribute.*

"In cases lacking direct evidence of drug distribution, intent to distribute 'must be shown by circumstantial evidence.'" *Askew v. Commonwealth*, 40 Va. App. 104, 108 (2003) (quoting *Servis v. Commonwealth*, 6 Va. App. 507, 524 (1988)). "Among the circumstances that tend to prove an intent to distribute are 'the quantity of the drugs seized, the manner in which they are packaged, and the presence of . . . equipment related to drug distribution.'" *Id.* at 108 (alteration in original) (quoting *McCain v. Commonwealth*, 261 Va. 483, 493 (2001)). Cell phones, for

- 14 -

example, are a common tool of the drug trade.  *White*, 293 Va. at 419.  Further, "the absence of paraphernalia suggestive of personal use . . . [is] regularly recognized as [a] factor[] indicating an intent to distribute."  *Askew*, 40 Va. App. at 108 (alterations in original) (quoting *Welshman v. Commonwealth*, 28 Va. App. 20, 37 (1998) (en banc)).

"Possession of a quantity greater than that ordinarily possessed for one's personal use" may be sufficient standing alone "to establish an intent to distribute it."  *Id.* at 109 (quoting *Gregory v. Commonwealth*, 22 Va. App. 100, 110 (1996)); *see also Hunter v. Commonwealth*, 213 Va. 569, 570 (1973) (stating that "quantity, when greater than the supply ordinarily possessed by a narcotics user for his personal use, is a circumstance which, standing alone, may be sufficient to support a finding of intent to distribute").  "Expert testimony, usually that of a police officer familiar with narcotics, is routinely offered to prove the significance of the weight . . . of drugs regarding whether it is for personal use."  *Askew*, 40 Va. App. at 109 (quoting *Shackleford v. Commonwealth*, 32 Va. App. 307, 327 (2000)).  Such testimony is another factor that "the fact finder may consider in determining whether drugs were possessed with intent to distribute."  *Id.* at 110.

Here, the Commonwealth presented two expert witnesses who both testified that Sears's possession of the controlled substances at issue in this case was inconsistent with personal use.  As they explained, Sears possessed nearly ten times the amount of cocaine that is consistent with personal use.  Further, he possessed a large amount of PCP in a vial that is commonly used to dip cigarettes—which Sears had in the passenger door handle—that he could then sell as "dippers."  Moreover, although there was only 2.5 grams of fentanyl, he possessed no paraphernalia to consume the fentanyl (or cocaine), and the experts testified that the possession of fentanyl alongside the other extensive controlled substances in the SUV was indicative of an intent to distribute.  Finally, the officers found three cell phones in the SUV even though there were only

two people, thereby providing further evidence of distribution.  *See White*, 293 Va. at 424

(finding that "two cell phones . . . indicates distribution because, as the expert testified, dealers

typically use one cell phone as a 'drug work phone' and the other as a 'personal phone'").  From

these facts and circumstances, a reasonable finder of fact could conclude that Sears possessed the

requisite intent to distribute, and therefore, committed PWID.

CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*